### TREAT *v.* PRYOR.

Drains—Culverts—Railroads—Surface Drainage.

Where a culvert or passageway for stock was constructed
at the natural watershed under the tracks of a railroad
company, in pursuance of an agreement with the grantor
of the right of way, and same has been maintained
for nearly 34 years, being the natural drainage outlet for
surface water for land on one side of the track, the owner
of' same is entitled to have the culvert as originally con-
structed maintained for such purpose, although not en-
titled to use it as a passageway for stock; the land on the
other side being owned by another.

Appeal from Lenawee; Hart, J.  Submitted January
11, 1917.  (Docket No. 104.)  Decided March 29, 1917.

Bill by Horace T. Treat against Edward B. Pryor
and Edward F. Kearney, receivers of the Wabash rail-
road, for an injunction restraining defendants from
filling up a certain culvert.  From a decree for plain-
tiff, defendants appeal.  Affirmed.

In the year 1880 David Chase, who was the owner
of certain lands in the township of Raisin, Lenawee
county, Mich., conveyed a strip 100 feet wide running
in a northeasterly and southwesterly direction through

his lands to the Detroit, Butler & St. Louis Railroad Company, since assigned to the Wabash Railroad Company, for a right of way. The deed contained the following clause:

"This party of the second part, if grades will admit, to put in culvert or passageway for stock of party of first part underneath said railroad at the natural watershed on said lands east of the highway as now traveled."

In 1880 or 1881 the railroad company constructed a culvert or passageway, approximately 12 feet wide and 8 feet high, under its tracks, pursuant to the clause above quoted. The culvert was used by David Chase as a cattle pass until his death in 1886. In 1887 the heirs of David Chase divided the land between themselves, and since then there has been no unity of ownership. The plaintiff, Horace Treat, became the owner of the land on the north side of the culvert, and one Allen became the owner of the land on the south side. In May, 1915, the defendants put an 18-inch pipe in the culvert in question for surface drainage, and an 8-inch pipe about 30 inches below the surface for subsurface drainage, and began to fill the culvert. Thereupon plaintiff filed his bill of complaint, asking for an injunction restraining defendants from filling up this passageway.

It appears that this culvert was the natural drainage outlet for about 131 acres of land, and there is evidence to prove that during rains and heavy storms large quantities of water find outlet through it, and in times of unusual freshets back up onto the land of the appellee, and that since the placing of the tubing in the culvert the water has backed up several times. The trial judge found that the plaintiff had no right to have this culvert maintained as a cattle pass, but that he did have a right to have it left in the same condition it had always been for the passage of water.

Kuhn, C. J. (*after stating the facts*). Irrespective of whether it should be said that the use of the culvert as a cattle pass can no longer be insisted upon, a reading of the record is convincing that the trial judge was right in holding that it should be maintained in the condition that it is as a waterway. The plaintiff has a right to have the water carried off from his land in the same way that it has been carried off for 30 years or more, and the defendants have no right to retard the flow of the water by changing the conditions of the culvert or narrowing the same. We are satisfied from the evidence that the substitution of the 18-inch tubing will do this. Instances are shown when during the past 34 years the culvert was overtaxed in capacity and water backed up on the land of the plaintiff to the damage of the proprietor of the land. The civil engineers who testified—and it would not seem to need their testimony to prove—that the 18-inch tubing would not carry off the water that the pass would. Such culvert draining is generally based on maximum conditions, and not on ordinary conditions or rainfalls, and plaintiff is justified in claiming the right to have the culvert maintained as it has been for nearly 34 years to take care of the maximum conditions of the surface water as it has come down to the culvert during those years. Clearly the defendants cannot adopt a new plan for carrying away the water which would set the water back upon the plaintiff's land or retard the escape of the water therefrom. That such would result from the substitution of 18-inch tubing is, as has been said, in our opinion a legitimate conclusion from the evidence in this record.

The decree of the court below is therefore affirmed, with costs to plaintiff.

Stone, Ostrander, Bird, Moore, Steere, Brooke, and Fellows, JJ., concurred.